UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PULSE MEDICAL : | |
| INSTRUMENTS, INC., : | |
| : | |
| Plaintiff, : | |
| : | No. 3:09cv1920 (MRK) |
| v. : | |
| : | |
| DRUG IMPAIRMENT DETECTION : | |
| SERVICES, LLC, : | |
| : | |
| Defendant. : | |

**RULING AND ORDER**

On April 13, 2009, Plaintiff Pulse Medical Instruments, Inc. ("Pulse") brought suit in the United States District Court for the District of Maryland against Defendant Drug Impairment Detection Services, LLC ("DIDS"), alleging two counts of fraud and one of negligent misrepresentation. *See* Compl., No. 09cv921 (D. Md. filed Apr. 13, 2009). Pulse's allegations relate to DIDS' actions and intentions during contract negotiations that took place in 2004. Those negotiations ultimately resulted in the parties signing an agreement ("the 2004 Agreement") in June of that year, which replaced a contract the parties had previously signed in December 2001 ("the 2001 Agreement"). In the 2004 Agreement, Pulse transferred to DIDS its 50 percent ownership interest in a trademark, "PassPoint," that the parties had used to market an automated device for testing whether individuals are impaired by, *inter alia*, intoxicating substances. According to Pulse,

it developed and patented this technology in 1994.[1] Beginning with the 2001 Agreement, the parties collaborated on developing and marketing the device (under the PassPoint trademark) for use by probation authorities. Pulse's lawsuit alleges, in general, that DIDS intentionally misrepresented its intent to maintain an ongoing working relationship with Pulse during the negotiations of the 2004 Agreement, misleading Pulse into, among other things, transferring its interests in the PassPoint brand name, thereby laying the groundwork for DIDS to go it alone and cut Pulse out of future PassPoint business opportunities. *See generally* Am. Compl. [doc. # 34].

On June 8, 2009 DIDS moved to dismiss this suit under Rules 12(b)(3) and 12(b)(6) of the *Federal Rules of Civil Procedure*. *See* Def.'s Mot. to Dismiss, No. 09cv921 (D. Md. filed June 8, 2009). DIDS' first argument, under Rule 12(b)(3), was based on a forum-selection clause in the 2004 Agreement, which designates Connecticut as the exclusive venue for all disputes arising out of the contract; DIDS' Rule 12(b)(6) argument is premised on another provision of that agreement that requires all claims arising out of it to be brought within one year. *See id.* Chief Judge Deborah Chasanow of the U.S. District Court for the District of Maryland agreed with DIDS that venue in Maryland was improper. *See Pulse Med. Instruments, Inc. v. Drug Impairment Servs.*, No. 09cv921, 2009 WL 4062095 (D. Md. Nov. 20, 2009). Chief Judge Chasanow noted that while Pulse has alleged that the 2004 agreement was procured by fraud, it had not argued that the forum-selection clause of that agreement was specifically induced by fraud, which Pulse must have done to preclude its enforcement. *See id.* at *2 ("To challenge the [forum-selection] clause on the basis of fraud or overreaching, a party must establish that 'the inclusion of that clause [itself] in the contract was the

---

[1] On May 25, 2007, Pulse filed suit against DIDS in the District of Maryland for allegedly infringing Pulse's patent of this technology. *See Pulse Med. Instruments v. Drug Impairment Servs., LLC*, No. 07CV1388 (D. Md. filed May 25, 2007). That suit is still pending.

product of fraud or coercion.'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)) (second alteration in original). Chief Judge Chasanow also rejected Pulse's argument that its claims do not "arise out" of the 2004 agreement, finding that since "Plaintiff's claims would not exist were it not for the 2004 Agreement," they "'arise from' the Agreement and are subject to the mandatory forum selection clause" therein. *Id.* at *4.

The case was then transferred to this Court, pursuant to 28 U.S.C. § 1406, without a resolution of the merits of DIDS' second argument for dismissal, based on Rule 12(b)(6). *See* Order [doc. # 25]. That portion of DIDS' Motion to Dismiss remains pending before this Court. For the reasons explained below, it is DENIED.

## I.

The standard for considering a motion to dismiss is a familiar one and will not be discussed at length here. In short, the function of a motion to dismiss under Rule 12(b)(6) is to determine whether the plaintiff has stated a legally-cognizable claim that, if proven, would entitle it to relief. In making that determination, the Court accepts as true all factual allegations in the complaint and draws all inferences from these allegations in the light most favorable to the plaintiff. *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009).

**II.**

As mentioned previously, DIDS' Motion to Dismiss under Rule 12(b)(6) is premised on a provision of the 2004 Agreement. That contract term provides that: "No claim arising under or pursuant to this Agreement may be brought by either party more than one (1) year after such party knew or reasonably should have known of the likely existence of the cause of action accrued." 2004 Agreement ¶ 19; Am. Compl. [doc. # 34] ¶ 18a. In their briefs, the parties spend considerable time arguing about when, exactly, Pulse "knew or reasonably should have known of the likely existence of the cause of action." The Court finds it unnecessary to resolve this issue.

Pulse has alleged that DIDS fraudulently induced it into signing the 2004 Agreement, and has requested as relief the rescission of that contract. *See id.* If Pulse's allegations are true – and at this stage, the Court must assume that they are – then Pulse would be entitled to void (or "rescind") the contract.[2] *See, e.g.*, *Kavarco v. T.J.E., Inc.*, 2 Conn. App. 294, 298 (1984) ("Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract."); *Connelly v. Taylor*, No. CV970403469S, 1999 WL 185111, at *2 (Conn. Super. Ct. Mar. 9, 1999); Restatement (Second) Contracts §§ 164, 376. "Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract

---

[2] In the alternative, Pulse could have elected to sue on the contract itself, and requested damages for its alleged breach. *See Kavarco*, 2 Conn. App. at 299 ("The party defrauded has the option of electing either to rescind the contract or to claim damages for the breach of the contract."). However, since Pulse has chosen rescission as its preferred remedy, Pulse has waived any claim for damages based on the contract, *see id.*, as it may not both rescind the contract and recover damages based on its breach, *see Pacelli Bros. Transp., Inc. v. Pacelli*, 189 Conn. 401, 409-10 (1983). Additionally, if it is successful in rescinding the contract, Pulse will likely have to restore any benefit it received under the contract to DIDS. *See Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989) ("[T]he general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in the status quo.") (citation omitted, last alteration in original).

4

and . . . places the parties, as nearly as possible, in the same situation as existed prior to the execution of the contract." *Kavarco*, 2 Conn. App. at 299. Obviously, if Pulse is successful in rescinding the 2004 Agreement, then the contractual term upon which DIDS' Motion to Dismiss is based would also be null and void. *See, e.g.*, *Metcalfe v. Talarski*, 213 Conn. 145, 159 (1989) ("[T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken.") (citation omitted, alteration in original). As DIDS' dismissal motion is based entirely on a provision of the 2004 Agreement that may ultimately become null and void, DIDS' motion to dismiss must fail. *See id.*; *see also Connelly*, 1999 WL 185111 at *2 (explaining that if the contract is rescinded because of fraud, "the contractual defenses asserted by the [defendants] are inapplicable").

In arguing against this conclusion, DIDS asserts that the contractual limitation term should be treated just as the forum-selection clause was treated by Chief Judge Chasanow – that is, DIDS argues that in order to avoid application of the limitations provision, Pulse must at least allege that it was fraudulent induced into agreeing to that specific contractual provision. *See* Def.'s Supplemental Mem. [doc. # 59] at 2-3. DIDS argues that the Court should apply the same reasoning to the contractual limitation term at issue here that the Supreme Court applied to arbitration and choice-of-law provisions in *Scherk*. *See id.* at 3-4 (citing *Scherk*, 417 U.S. at 516 ("A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.")).

The Court disagrees. DIDS' assertion that contractual limitations clauses "should" be treated the same as forum-selection, arbitration, and choice-of-law clauses is unsupported by even a single

case citation.  The Court will not discuss the cases at length here, but suffice it to say that there are good reasons for treating forum-selection[3] and choice-of-law clauses differently than those, such as the one here, that purport to limit the time period for bringing claims.  *Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.  It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ("[C]ontracts entered into freely generally should be enforced because the financial effect of forum selection and choice of law clauses likely will be reflected in the value of the contract as a whole.") (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593-94 (1991)).  Since DIDS has failed to explain how its contractual limitation defense would survive Pulse's successful rescission of the 2004 Agreement, its Motion to Dismiss [doc. # 49] must be denied.

### III.

For the foregoing reasons, Defendant's Motion to Dismiss [doc. # 49] is DENIED.

---

[3] "[A]n arbitration clause is merely a specialized type of forum selection clause." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 n.2 (2d Cir. 1993).

IT IS SO ORDERED.


/s/  Mark R. Kravitz
     United States District Judge



**Dated at New Haven, Connecticut:  May 13, 2010.**